# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 9228 | **DATE** | 8/28/2003 |
| **CASE TITLE** | Terry L. Spirk vs. Thomas B. Sullivan | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The Bankruptcy Court's orders granting Sullivan's Motion for Summary Judgment, and denying Spirk's subsequent Motion for Reconsideration, are AFFIRMED.

(11) ■ [For further detail see order attached to the original minute order.]

Document Number: 10

Date docketed: AUG 2 9 2003

courtroom deputy's initials: WAP

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TERRY L. SPIRK,

    Debtor-Appellant,

v.

THOMAS B. SULLIVAN, Chapter 7 Trustee,

    Plaintiff-Appellee.

Case No. 02 C 9228

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court is Appellant Terry L. Spirk's ("Spirk") appeal of two Bankruptcy Court orders, one granting a Motion for Summary Judgment filed by the appointed trustee in this case, and the other denying Spirk's subsequent Motion for Reconsideration. The Court has jurisdiction pursuant to 28 U.S.C. § 158. For the following reasons, the Court affirms.

### I. BACKGROUND

This appeal arises out of Spirk's individual Chapter 7 bankruptcy action, which he voluntarily filed on February 6, 2001 (the "Spirk Action"). At the time, Spirk was the chief executive officer and a 98.6% stockholder of American Benefits Group, Inc., a holding company for four affiliated entities. One of those entities was a wholly-owned subsidiary known as Lancaster Annuities Services Co., Inc. ("LASCO"), a company that sold annuities and insurance products through a network of independent agents.



Between December 1996 and November 2000, LASCO issued more than 300 promissory notes (the "LASCO Notes") to some 200 investors, borrowing $9.033 million (an amount which reflects both principal and certain sums of capitalized interest)(the "Note Proceeds"). Spirk was a cosigner on all of the LASCO Notes, personally guaranteeing their repayment. Indeed, Spirk listed more than $9,000,000 owing to 204 LASCO investors in the schedules of debt he filed in the Spirk Action. On March 13, 2001, a group of LASCO's creditors filed an involuntary petition for relief against it under Chapter 7 of the Bankruptcy Code based on LASCO's failure to repay the LASCO Notes. On March 22, 2001, the Bankruptcy Court granted the petition and entered an order for relief against LASCO.

In an effort to determine whether Spirk or LASCO owned any property which could be administered for the benefit of their creditors, Thomas B. Sullivan ("Sullivan"), the appointed trustee in both bankruptcy actions, asked that Spirk turn over LASCO's books and records. In response, in May 2001 Spirk submitted to Sullivan fourteen boxes containing the requested documents, including tax returns, bank statements, computer printouts of check registers, cancelled checks, accounts payable listings, investor files, correspondence, and vendor files.

On October 15, 2001, Sullivan filed a five-count Complaint (the "Sullivan Complaint") objecting, under 11 U.S.C. § 727, to Spirk's discharge in the Spirk Action. Count One, under

§ 727(a)(2), alleged that Spirk concealed his property within one year of his individual bankruptcy petition with the intent to hinder creditors. Count Two, under § 727(a)(3), alleged that Spirk failed to (i) turn over certain bank documents for LASCO and its affiliated entities, (ii) file schedules in the LASCO Chapter 7 action, and (iii) provide certain narrative descriptions of, and documentation for, transactions with individual LASCO investors. Count Three, under § 727(a)(4), alleged that Spirk knowingly gave a false oath by failing to reveal the existence or transfer of the Note Proceeds in the schedules and statement of affairs filed in the Spirk Action. Count Four, under § 727(a)(5), alleged that Spirk had failed to explain satisfactorily the loss of the Note Proceeds. Count Five, under § 727(a)(7), alleged that Spirk committed these acts on behalf of LASCO, an "insider" in a concurrent pending Chapter 7 bankruptcy case. Spirk answered the Sullivan Complaint on November 19, 2001.

On February 12, 2002, Sullivan moved for summary judgment on Counts Four and Five of the Sullivan Complaint, arguing that there was no dispute about the nature of the "voluminous documents" turned over by Spirk and yet still Spirk had failed to explain satisfactorily the dissipation of the Note Proceeds. Spirk filed a Response on May 10, 2002.

On July 29, 2002, the Bankruptcy Court issued a 13-page memorandum opinion and order granting Sullivan's Motion for Summary

Judgment and denying Spirk a discharge pursuant to § 727(a)(5) and (7). On August 8, 2002, Spirk filed a "Motion for Reconsideration and Leave to File Amended Statement of Facts." Following two separate hearings, on November 8, 2002 the Bankruptcy Court denied the Motion for Reconsideration in an oral ruling.

On November 22, 2002, Spirk timely filed this appeal.

## II. **DISCUSSION**

### A. Motion for Summary Judgment

#### *1. Standards*

Spirk first asks the Court to review the Bankruptcy Court's order granting Sullivan's motion for summary judgment. The Court reviews an order granting summary judgment *de novo*.

Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to these proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *see Russo v. Health, Welfare & Pension Fund, Local 705*, 984 F.2d 762, 769 (7th Cir.1993); *Chapman*, 265 B.R. at 817. A fact is "material" if it could affect the outcome of the suit under the governing law; a dispute is "genuine" where the evidence is such that a reasonable jury could return a verdict for

the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the initial burden of articulating the basis for its motion and identifying evidence which shows that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The non-movant may not rest upon the mere allegations or denials in his pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The Supreme Court has emphasized "that at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue [of material fact] for trial." *Anderson*, 477 U.S. at 249. In performing this task, the Court "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor." *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999)(citation omitted); *see Oest v. Illinois Dep't of Corrs.*, 240 F.3d 605, 610 (7th Cir. 2001); *In re Chapman*, 265 B.R. 796, 817 (Bankr. N.D. Ill. 2001). However, "[s]elf-serving assertions without factual support in the record will not defeat a motion for summary judgment." *Jones v. Merchants Nat'l Bank & Trust Co.*, 42 F.3d 1054, 1058 (7th Cir. 1994).

## *2. Analysis*

11 U.S.C. § 727(a) provides, in pertinent part, as follows:

> The court shall grant the debtor a discharge, unless . . . (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities [or] . . . (7) the debtor has committed any act specified in paragraph . . . (5) . . . of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider. . . .

11 U.S.C. § 727(a)(5),(7). There is no question that Spirk is an "insider" for purposes of § 727(a)(7) - Spirk admits in his bankruptcy schedules to owning nearly 100% of American Benefits Group, Inc., of which LASCO is a wholly-owned subsidiary, see 11 U.S.C. § 101(31)(A)(iv), and LASCO has a concurrently pending involuntary Chapter 7 bankruptcy case.

In keeping with the "fresh start" goal of bankruptcy relief, objections to discharge under § 727 are to be liberally construed in favor of debtors and strictly against objectors. *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996); *Stathopoulos v. Bostrom (In re Bostrom)*, 286 B.R. 352, 359 (Bankr. N.D. Ill. 2002). That said, § 727(a)(5) is broadly drawn, and vests the Court with wide discretion to deny a discharge where the debtor does not adequately explain a shortage, loss, or disappearance of assets. *First Federated Life Ins. Co. v. Martin (In re Martin)*, 698 F.2d 883, 886

(7th Cir. 1983). In reviewing the proffered explanation of a debtor, "[t]he Court is not concerned with the wisdom of [the] debtor's disposition of assets, but is concerned with the truth, detail and completeness of the debtor's explanation of the loss." *Bostrom*, 286 B.R. at 364 (citing *In re D'Agnese*, 86 F.3d 732, 735 (7th Cir. 1996)).

Although the party moving the Bankruptcy Court to deny discharge bears the ultimate burden of proof under § 727(a)(5), FED.R.BANKR.P. 4005 ("At a trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection."), there are shifting burdens of production along the way. *Bostrom*, 286 B.R. at 364; *Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 955 (Bankr. N.D. Ill. 1995). Initially, the party objecting to the discharge must demonstrate by a preponderance of the evidence that the debtor at one time owned substantial and identifiable assets that are no longer available for distribution to his creditors. *Bostrom*, 286 B.R. at 364; *Sonders v. Mezvinsky (In re Mezvinsky)*, 265 B.R. 681, 689 (Bankr. E.D. Pa. 2001); *Bryson*, 187 B.R. at 955. If the party objecting to the discharge carries this burden, then the debtor must provide a satisfactory explanation for the loss of assets. *Banner Oil Co.*, 187 B.R. at 955; 11 U.S.C. § 727(a)(5); *see Mezvinsky*, 265 B.R. at 690.

"What constitutes a 'satisfactory' explanation for § 727(a)(5) purposes is left to the discretion of the Court." *Bostrom*, 286 B.R. at 364 (citing *Baum v. Earl Millikin, Inc. (In re Baum)*, 359 F.2d 811, 814 (7th Cir. 1966)); *see also Olson v. Potter (In re Potter)*, 88 B.R. 843, 849 (Bankr. N.D. Ill. 1988). "[T]he focus of the inquiry is not exclusively on the subjective nature or honesty of the debtor's explanation, but is also on the objective adequacy of such explanation." *Bostrom*, 286 B.R. at 365; *see In re D'Agnese*, 86 F.3d 732, 734-735 (7th Cir. 1996); *First Commercial Fin. Group, Inc. v. Hermanson (In re Hermanson)*, 273 B.R. 538, 546 (Bankr. N.D. Ill. 2002). The debtor's explanation need not be exhaustive, but "must consist of more than [a] vague, indefinite, and uncorroborated hodgepodge of financial transactions." *Baum*, 359 F.2d at 814; *Madonia v. Hasan (In re Hasan)*, 245 B.R. 550, 554-55 (Bankr. N.D. Ill. 2000). Indeed, the debtor must "at least produce sufficient documentation so as to free the Court from the need to speculate about the veracity of the debtor's explanations." *Banner Oil Co.*, 187 B.R. at 956; *Bostrom*, 286 B.R. at 364-65; *see also Bay State Milling Co. v. Martin (In re Martin)*, 145 B.R. 933, 950 (Bankr. N.D. Ill. 1992)("[T]he explanation must be good enough to eliminate the need for the Court to speculate as to what happened to all the assets.").

Furthermore, the debtor's documentation must be presented in a concise, organized, and perspicuous format. As the Eleventh

Circuit put it, a party "may not simply place tow sacks before the bankruptcy judge and request the judge to sift through the documents and attempt to reconstruct the flow of the debtor's assets." *Hughes v. Lieberman (In re Hughes)*, 873 F.2d 262, 264 (11th Cir. 1989). The bankruptcy judge below rightly noted that offering the court a mass of documents does not meet the standard of § 727(a)(5) unless the debtor "organizes and compiles them into a reliable explanation, explains discrepancies and fills in gaps." (July 29, 2002 Mem. Op. at 7); *see also Hermanson*, 273 B.R. at 550-51; *Mezvinsky*, 265 B.R. at 693.

Sullivan has properly established a prima facie case under § 727(a)(5) and (7). The evidence undisputedly demonstrates that LASCO (along with Spirk as a guarantor) borrowed $9.033 million from numerous investors between December 1996 and November 2000. Spirk filed the Spirk Action in February 2001, less than a year after the last of these loans was made. Neither Spirk nor LASCO shows any portion of the Note Proceeds as available in their bankruptcy schedules, and Sullivan is entitled to a satisfactory explanation of how these assets were depleted before Spirk is granted a discharge.

Spirk offered two responses to Sullivan's prima facie case. First, he contends that the fourteen boxes of documents previously turned over to Sullivan – boxes which, as previously noted, contained LASCO's tax returns, bank statements, computer printouts

of check registers, cancelled checks, accounts payable listings, investor files, correspondence, and vendor files – provide a satisfactory explanation. Spirk pursues the same essential argument in this appeal, laying fault with Sullivan for being unwilling "to review the Ledger Detail (which contains the information) or the supporting documents to decide whether there are facts to support [Spirk's] explanation. . . ." (Appellant's Reply at 4.)

Spirk's position is meritless. It is not the Court's duty to act as sleuth, ferreting through a debtor's books and records in an attempt to trace the loss of assets or reconstruct the debtor's financial history. *Bostrom*, 286 B.R. at 365 ("It is not the role of the Court to sift through the Debtors' bank records and credit card statements in an attempt to determine the loss of assets or categorize how they spent more than they earned."). Nor was it Sullivan's duty. Rather, once Sullivan made out a § 727(a)(5) prima facie case in his Motion for Summary Judgment, it became Spirk's burden to compile the mass of relevant documents into a concise explanation that explained discrepancies and filled in gaps such that the Bankruptcy Court was free of any need to speculate about the fate of the Note Proceeds. *Hermanson*, 273 B.R. at 550 ("In complex cases involving substantial assets and funds, even producing for creditors a ream of potentially relevant documents – including evidence such as checking account ledgers, canceled

checks, deposit slips, bank statements, and income tax returns – will not by itself create a satisfactory explanation for the disappearance of assets, unless an accountant transforms them into a complete and credible explanation, obtains missing information, explains discrepancies, and does whatever else is necessary to make the explanation intelligible."); see FED.R.CIV.P. 56(e); *Banner Oil Co.*, 187 B.R. at 956; *Bostrom*, 286 B.R. at 364-65; *Bay State Milling Co.*, 145 B.R. at 950 ("[T]he explanation must be good enough to eliminate the need for the Court to speculate as to what happened to all the assets."). Spirk failed to carry this burden; in fact, he outright shirked the burden, urging the Bankruptcy Court itself (as well as Sullivan) to go wading through fourteen boxes of documents to find the answers that 11 U.S.C. § 727(a)(5) makes it his duty to provide.

Spirk's second, and more detailed, response came in the form of a document entitled "Terry L. Spirk's Explanation and Exhibits" (the "Explanation"). (Spirk initially filed the Explanation as his formal response to the Motion for Summary Judgment, but later supplemented it following protest by Sullivan that the Explanation did not comply with local rules.) As the Bankruptcy Court noted, the Explanation reveals that, of the $9.033 million that LASCO borrowed, $.796 million in principal had been repaid. That means that, to have survived summary judgment, Spirk needed to account satisfactorily for the remaining $8.237 million.

As the bankruptcy judge observed, the Explanation discloses that LASCO and its affiliated entities had operating expenses of roughly $10.166 million between 1997 and 2000, a sum which would appear more than sufficient to explain the disappearance of the $8.237 million principal amount at issue. However, as discussed by the bankruptcy judge, $3.796 million of the $10.166 million figure consists of interest expense that Spirk has failed to show was ever paid out in cash to any investor. This failure of proof is a result of Spirk's choice of an accrual, rather than cash, accounting methodology for LASCO and its affiliated entities between 1997 and 2000. As noted in the lower court opinion, "if the accrual method is used, something more than an expense entry is required to show how much interest was actually paid." (July 29, 2002 Mem. Op. at 11 n.3.) Here, the Explanation discloses nothing more than expense entries.

Spirk expressly acknowledges the ambiguity this creates in his explanation. In Spirk's sur-reply (entitled "Supplemental Response") to the Motion for Summary Judgment, after conceding that the LASCO entities used accrual accounting between 1997 and 2000, he states that "'interest expense' reflects the amount of interest which accrued during a particular time period whether it was accrued not paid, accrued and paid or accrued and capitalized." This, of course, is no explanation at all – it merely begs the question of how much interest was actually paid out in cash. In an

effort to salvage matters, Spirk then goes on to say in the Supplemental Response that "[t]he exact detail of all amounts paid to investors on notes (interest and principal) is in the general ledger detail provided and evidenced by the canceled checks and bank statements also provided." This is impermissible. As previously discussed, § 727(a)(5) and (7) require Spirk to do far more than simply refer the Bankruptcy Court to an outside collection of documents; rather, it is squarely his burden to compile and analyze those documents and ultimately to explicate the loss of assets to the Bankruptcy Court's satisfaction. *See Hermanson*, 273 B.R. at 550-51; *Mezvinsky*, 265 B.R. at 693. Even beyond the impermissibility of Spirk's redirection tactic, he was also utterly unconvincing in any event. Spirk failed to provide the Bankruptcy Court with any admissible evidence – such as an affidavit – that any interest was ever paid out in cash to investors. Worse still, he even failed to furnish the Bankruptcy Court with the general ledger, canceled checks and bank statements themselves (to say nothing of a well-analyzed compendium distilling the information purportedly contained in those documents). (*See* Def.'s Mot. for Recons. at 1 ("Regrettably, Spirk failed to file any parts of the general ledgers, bank check stubs and bank checks in support of his Response [to the Motion for Summary Judgment] and explanation of the loss although such records detail and evidence the substantial payments of interest on investor notes.")). Spirk

left the Bankruptcy Court to rely on his *ipse dixit* assertion that certain amounts of interest were paid out in cash. That is certainly not good enough under § 727(a)(5) and (7).

The Court agrees with the Bankruptcy Court that Spirk has provided "no admissible evidence to support the allegation that any of the four corporate entities paid any interest out in cash." As a consequence, the entire $3.796 million interest expense reported in the Explanation must be excluded from the $10.166 million in operating expenses incurred by the LASCO affiliated entities between 1997 and 2000, leaving a maximum of $6.37 million that could have been paid out in cash to meet expenses. Spirk, however, needed to explain the loss of $8.237 million in note proceeds. He has therefore failed to account satisfactorily for at least $1.867 million and the Bankruptcy Court properly denied him a discharge on that basis. Couched in the familiar language of summary judgment, the Court holds that no reasonable jury could find that Spirk has satisfactorily explained the loss or deficiency of the Note Proceeds under the standards of 11 U.S.C. § 727(a)(5) and (7).

### III. **MOTION FOR RECONSIDERATION**

#### A. Standards

Spirk next asks the Court to review the Bankruptcy Court's order denying his Motion for Reconsideration. The decision to grant or deny a motion for reconsideration is left to the sound discretion of the lower court. *LB Credit Corp. v. Resolution Trust*

*Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995). Accordingly, the Court reviews the Bankruptcy Court's decision on a motion for reconsideration for abuse of discretion. *See Popovits*, 185 F.3d at 730. "Such abuse exists only in situations in which no reasonable person could agree with the [lower] court." *Talano v. Northwestern Med. Faculty Found., Inc.*, 273 F.3d 757, 762 (7th Cir. 2001) (internal quotation marks omitted); *Hope v. United States*, 43 F.3d 1140, 1144 (7th Cir. 1994).

A motion for reconsideration, authorized by Federal Rule of Civil Procedure 59 and made applicable to bankruptcy proceedings through Federal Rule of Bankruptcy Procedure 9023, serves the limited function of allowing a court to correct manifest errors of law or fact, or to consider newly discovered evidence that could not have been adduced during pendency of the prior motion. *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987); *Whitten v. ARS National Services*, 00 C 6080, 2002 WL 1332001, at *1 (N.D. Ill. June 18, 2002); *Kohl v. Murphy*, 767 F.Supp. 895, 904 (N.D. Ill. 1991). However, "[t]he rule does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could or should have been presented to the district court prior to judgment." *Popovits*, 185 F.3d at 730 (internal quotation marks omitted); *see Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995); *In re*

*Gleason*, 01 B 14730, 2001 WL 1844656, at *1 (Bankr. N.D. Ill. Dec. 20, 2001).

### B. Analysis

The basis of Spirk's Motion for Reconsideration was his argument that the Bankruptcy Court improperly "inferred . . . that no actual cash payments of interest" were made by any of the LASCO affiliated entities. (Mot. for Recons. at 2.) To support his argument, Spirk submitted with his Motion for Reconsideration selected documents copied from the fourteen boxes previously turned over to Sullivan, as well as the general ledgers, bank check stubs and bank checks which he had failed to provide as part of his Response to the Motion for Summary Judgment. He also included an affidavit from Paul Du Val, LASCO's former accountant, that purported to confirm that some $1.997 million in interest payments had been made on the LASCO notes during 1997 to 2000. Spirk did not, however, present any previously unavailable or newly-discovered evidence.

The Bankruptcy Court correctly determined that the additional documents submitted in Spirk's Motion for Reconsideration came too late; Spirk could and should have provided them as part of a coherent, well-documented synopsis in response to Sullivan's Motion for Summary Judgment. (Nov. 8, 2002 Hr'g. Tr. at 10-11); see *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) ("Reconsideration is not an appropriate

forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion."). Spirk failed to show that the Bankruptcy Court made any manifest errors of law or fact in ruling on Sullivan's Motion for Summary Judgment, and offered up no newly discovered evidence that could not have been submitted when he originally filed his Response to the Motion for Summary Judgment. Accordingly, the Court holds that the Bankruptcy Court did not abuse its discretion in denying the Motion for Reconsideration.

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's orders granting Sullivan's Motion for Summary Judgment, and denying Spirk's subsequent Motion for Reconsideration, are **AFFIRMED**. **IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date: August 28, 2003